UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW RAZMUS,

    Plaintiff,

v.

KENT COUNTY, et al.,

    Defendants.
_____/

Case No. 1:20-cv-451

Hon. Hala Y. Jarbou

## **OPINION**

This is a civil rights action asserting claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Plaintiff Matthew Razmus alleges that Defendants Kent County Deputies Jacob Vickery and Anthony Ysquierdo and Defendant Kent County Officer Elizabeth Ondovscik ("Defendant Deputies") used excessive force when arresting him in violation of his Fourth Amendment rights. Plaintiff also brings claims against Defendant Kent County. The complaint states four claims: (1) excessive force in violation of the Fourth Amendment against Vickery, Ysquierdo, and Ondovcsik (Count I); (2) deliberately indifferent policies, customs, and established practices, including inadequate training against Kent County (Count II); (3) disability-based discrimination in violation of Title II of the Americans with Disability Act (ADA) against Kent County (Count III); and (4) disability-based discrimination in violation of Section 504 of the Rehabilitation Act against Kent County (Count IV). Before the Court is Defendants' motion for summary judgment on all Counts (ECF No. 36). The Court will grant the motion in part on one theory of *Monell* liability against Kent County and deny the motion on all other grounds.

## I. BACKGROUND

On July 27, 2019, Defendant Deputies responded to a domestic dispute on a street in Alpine Township, Michigan. Plaintiff and his girlfriend, Kaitlin Marner, were engaged in a verbal confrontation. Plaintiff explained to Defendants that no assault had occurred. Defendants conducted a routine LEIN check on Plaintiff and determined that he had an outstanding bench warrant for retail fraud. Plaintiff was arrested on account of the bench warrant and not in connection with the initial dispute with Marner.

At the time of the arrest, Plaintiff was recovering from a fracture to his right arm for which he had undergone surgery. Plaintiff had two pins in his right wrist and hand to stabilize the fracture and a splint covering his hand and forearm. Plaintiff claims that when Defendants attempted to handcuff both of his hands behind his back with traditional metal handcuffs, he heard a pop when the metal handcuff latched over the splint in his right hand. Plaintiff states that he expressed his pain and discomfort, that Defendants released the right handcuff, and proceeded to reattach the metal handcuff. He expressed his pain again, after which Defendants changed course and used a flex cuff (a hard plastic zip tie) on his right wrist instead. Plaintiff claims that he complained of pain from the flex cuff as well, and that Defendants disregarded this complaint.

Defendants testified in their depositions to a different version of events. Defendants claim that the arrest occurred without a complaint from Plaintiff. They state that they noticed the splint immediately and used a flex cuff on Plaintiff's injured right wrist from the start. They state that they placed traditional handcuffs over his left wrist to which they connected the flex cuff.

On July 30, 2019, Plaintiff went to the emergency room immediately after his release from jail. Plaintiff underwent surgery the following day to remove the displaced pin. His medical records indicate that he also developed a MRSA infection and cellulitis in his right hand.

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)). "Courts consider the evidence in light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013).

### B. Qualified Immunity

"Qualified immunity is an affirmative defense that protects government officials from liability 'when a reasonable official in the defendant's position would not have understood his or her actions to violate a person's constitutional rights.'" *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (quoting *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007)). Under § 1983, officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* This legal principle must "clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* at 590. It is not necessary for there to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"

*Wesby*, 138 S. Ct. at 589 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "[C]ourts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft*, 563 U.S. at 735.

The plaintiff bears the burden of showing that the officer is not entitled to qualified immunity. *See LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016).

### III. ANALYSIS

Defendants seek summary judgment on several grounds. First, they argue that even when applying Plaintiff's version of the facts, Plaintiff cannot show that he experienced "unduly tight or excessively forceful handcuffing" in violation of the Fourth Amendment. *See Hughey v. Easlik*, 3 F.4th 283, 289 (6th Cir. 2021). Second, Defendants argue that the Deputies are entitled to qualified immunity because they did not violate a clearly established right, and because they acted reasonably and in good faith. Further, they argue that because Defendant Deputies cannot be held liable under § 1983, Defendant Kent County cannot be held liable. Lastly, Defendants argue that Plaintiff cannot satisfy the elements of the disability claims because he was not disabled within the meaning of the statutes at the time of arrest, and that the event of an arrest is not covered under either Act.

**A. Count I: Excessive Force by Defendant Deputies & Qualified Immunity**

**1. Constitutional Violation**

"The Fourth Amendment guarantees the right to be free from excessive force to persons who are stopped, arrested, or held in custody by an arresting officer." *Hughey*, 3 F.4th at 289. In Fourth Amendment excessive-force claims, courts in the Sixth Circuit use an objective-reasonableness standard that is a "fact-specific, totality-of-the-circumstances inquiry." *Id.* There is a more specific three-part test for determining whether "'unduly tight or excessively forceful handcuffing'" constitutes excessive force. *Id.* (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583

4

F.3d 394, 401 (6th Cir. 2009)).  To survive summary judgment, a plaintiff must show a genuine issue of material fact that: "(1) [they] complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing."  *Morrison*, 583 F. 3d at 401.

Defendants argue that Plaintiff has failed to satisfy the first two parts of this test.  Plaintiff testified in his deposition that he complained about the tightness of the handcuffs all three times he was handcuffed.  Regarding the final handcuffing using flex cuffs, Plaintiff stated:

> Q. Okay.  Did you complain about the zip tie being tight?
>
> A. Yes, I told them again, something is not right.
>
> Q. Was the zip tie too tight?  That's what I'm asking you.
>
> A. I was in pain.
>
> Q. Was it from the zip tie or was it from the two times you said they tried to put metal handcuffs on you?
>
> A. I'm going to say both.
>
> . . . .
>
> A. I said I was in pain from the prior cuffings and the zip tie.
>
> Q. Did you tell them that you didn't want to be handcuffed at all?
>
> A. I did.
>
> Q. And what did they say?
>
> A. They didn't listen.

(Razmus Dep., ECF No. 39-4, PageID.569.)  Later in the deposition, Plaintiff reiterated his complaints about the flex cuffs:

> Q. All right.  And then the third time the officers placed a zip tie on your wrist over that cast, correct?
>
> A. Correct.

    Q.    And you again complained of pain that the zip tie was too tight over the cast, correct?

    A.    Correct.

    Q.    And your complaints of pain and tightness were ignored; is that correct?

    A.    Correct.

(*Id.*, PageID.573.) Despite these two instances, Defendants point to a third instance in which Plaintiff responded ambiguously:

    A.    So, no, I think it's messed up right now because of, you know, of – of improper police work . . . . You know, just I think they – they could have prevented the whole thing from going the way it did, so . . . . They could have prevented me from having – having another surgery and having my hand –

    Q.    How could they have prevented what happened?

    A.    By not cuffing me twice over a surgically repaired wound, I would say. What do you think?

    Q.    So you're saying that they should not have handcuffed you at all?

    A.    I'm saying what they're, you know – I'm saying that – that saying that they didn't need to handcuff me over my wound twice, that's what I'm saying.

    Q.    You didn't have any objection to them using the zip tie around your wrist?

    A.    I don't know, man.

    . . . .

    Q.    You don't know whether they should have used the zip tie or the Flex Cuffs, as they're called, you don't know?

    A.    Not sure.

(*Id.*, PageID.572.)

Considering the evidence in the light most favorable to Plaintiff, the two instances in which Plaintiff stated that he complained about the tightness of the handcuffs every time, including when Defendants used flex cuffs, create a genuine issue of material fact. This satisfies the first part of

6

the handcuff test for purposes of summary judgment. It is uncontested that Defendants did not remove the flex cuffs. Therefore, there is also a genuine issue of material fact whether Defendants ignored Plaintiff's complaints.

### 2. Clearly Established

The second prong of the qualified-immunity test requires an inquiry into "whether the state of the law [at the time of the action giving rise to the claim] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (alterations in original). The Sixth Circuit has held since 1991 that "the right to be free from too-tight handcuffing" has been "clearly established." *Hughey v. Easlik*, 3 F.4th at 293 (citing *Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997)); *see also Baynes,* 799 F.3d at 613 ("[T]his Court [has] directly and unequivocally determined, time and time again, that unduly tight or excessively forceful handcuffing is a clearly established violation of the Fourth Amendment.").

The Court notes Defendants' supplemental authority, but it does not change the analysis here. In *Rivas-Villegas v. Cortesluna*, the Supreme Court held that Rivas-Villegas was entitled to qualified immunity because it was not clearly established that his action of placing his knee on Cortesluna for no more than eight seconds on the side of his back where he had a knife in his pocket, was unlawful. *Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662, at *3 (2021). Similarly, the Supreme Court held that the cases the Tenth Circuit relied on in *City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664 (2021) did not clearly establish that the actions of the officers were unlawful. *Id.* at *2. In *Bond*, officers fatally shot a man who had been holding a hammer as if he were about to throw it and did not drop it after being told to do so. *Id.* at *1. Neither of these cases apply as they are not factually similar to the events here, and it has been clearly established that excessively forceful handcuffing is unconstitutional.

7

There is a genuine issue of material fact whether the Defendant Deputies used excessive force in handcuffing Plaintiff in violation of his clearly established Fourth Amendment rights. Therefore, Defendant Deputies are not entitled to qualified immunity.

### B. Count II: *Monell* Liability by Defendant Kent County

The Court notes that Defendants filed an "Amended Brief in Support of Motion for Summary Judgment" (ECF No. 38), four days after the deadline for filing dispositive motions without seeking leave from the Court.  Defendants' Amended Brief contains a new argument for summary judgment for Count II, which was not included in their initial brief.  A late motion for summary judgment is analyzed as a request to modify the scheduling order.  *Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005).  "A [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge." *Id.* (citing Fed. R. Civ. P. 16(b)).  "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Id.* (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (internal quotation marks omitted)).  The district court should consider possible prejudice to the party opposing the modification as another factor.  *Inge*, 281 F.3d at 625.  The Court is satisfied that good cause exists.  Further, Plaintiff was able to respond to Defendants' argument in full in his brief in opposition and does not assert that the Amended Brief caused him any prejudice.

Plaintiff contends that Kent County is responsible for the Defendant Deputies' conduct. Plaintiff claims that the violation of his rights by the deputies was "caused by the series of deliberately indifferent policies, customs, and established practices, including inadequate training, by Kent County. . ." (Pl.'s First Am. Compl., ECF No. 24, PageID.107.)  His claim is based in part on allegations of Kent County:

8

>   b. Implementing a policy and practice of imposing unnecessary mechanical restraints such as handcuffs on persons with disabilities;
>
>   c. On information and belief, failing to train adequately its officers including appropriate interactions with persons with disabilities proper procedures and preparation regarding handcuffing and handcuffing safety;

(*Id.*, PageID.108.)

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities could be liable under § 1983 for constitutional violations, but it "cannot be liable for the constitutional torts of its employees." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). In other words, "[a] municipality may not be held liable under § 1983 on a *respondeat superior* theory . . . '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)). A plaintiff must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). The plaintiff must establish that the policy or custom was the "'moving force' behind the deprivation of the plaintiff's rights." *Powers*, 501 F.3d at 607. There are four ways a plaintiff can show an illegal policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.*

Plaintiff's claim relies on the first and third ways a plaintiff can show an illegal policy or custom: an official policy and inadequate training. To establish an illegal official policy or custom, "a plaintiff must '(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy.'" *Osberry v. Slusher*, 750 F. App'x 385, 389 (6th Cir. 2018) (citing *Alkire v. Irving*, 330 F.3d 802,

9

815 (6th Cir. 2003)).  To establish a "failure to train" claim, Plaintiff must show "(1) a clear and persistent pattern of illegal activity, (2) which the City knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the City's custom was the cause of the deprivation of her constitutional rights." *Id.* at 397 (citing *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016) (internal quotation marks omitted)).  For this type of *Monell* claim, Plaintiff must show that Kent County ignored a "clear and persistent pattern of misconduct" that should have prompted corrective training for the Deputies.  *Id.*

First, Defendants argue that a *Monell* claim cannot survive against Kent County because Plaintiff cannot establish a constitutional violation for excessively forceful handcuffing.  Because the Court has found that a genuine issue of material fact exists as to the excessively forceful handcuffing, the *Monell* claim against Kent County is not extinguished on this ground.

Next, Defendants argue that Plaintiff has failed to plead or provide specific prior instances of unconstitutional conduct under similar circumstances that would have put Kent County on notice of a problem with its training.  Plaintiff responds that Defendants' focus on inadequate training is irrelevant because "[t]he nucleus of [his] *Monell* claim lies in the policy and/or custom of the Kent County Sheriff's Department that requires all arrestees to be both handcuffed and handcuffed behind their back when they are arrested." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 39, PageID.505.)  Plaintiff offers no further support for the inadequate training claim.  Therefore, because Plaintiff does not make an argument for the inadequate training claim, Defendants are entitled to summary judgment on this theory of *Monell* liability against Kent County.

As to Plaintiff's *Monell* claim based on an illegal official policy or custom, Plaintiff points to two policies at issue: (1) the policy that requires all arrestees to be handcuffed and (2) the policy

10

that requires all arrestees to be handcuffed behind their back. Defendants do not deny that Kent County has a policy that requires all arrestees to be handcuffed. Plaintiff argues that this inflexible policy was the cause of the excessive force inflicted upon him that reinjured his wrist. Because it is undisputed that Kent County has a policy that arrestees must be handcuffed, and there is a question of fact whether this policy was the cause of the injury to Plaintiff, Defendant Kent County is not entitled to summary judgment on this issue.

Defendants contend that Plaintiff raises a new claim when arguing that Kent County is liable for the policy that requires arrestees to be handcuffed behind their back. Defendants argue that this policy claim was not asserted in Plaintiff's Amended Complaint. Plaintiffs "cannot assert new claims in response to summary judgment." *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 817 (6th Cir. 2020). Plaintiff's amended complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Id.* (citing *Bickerstaff v. Lucarelli,* 830 F.3d 388, 296 (6th Cir. 2016) (internal quotations marks omitted)). Plaintiff stated in Count II of his Amended Complaint that Kent County is subject to *Monell* liability for "implementing a policy and practice of imposing unnecessary mechanical restraints such as handcuffs on persons with disabilities." (Pl.'s First Am. Compl., PageID.108.) This claim encompasses the policies in Plaintiff's response to Defendants' motion for summary judgment. Therefore, the Court will address this claim.

In response to this policy claim, Defendants present Kent County Sheriff's Office Policy and Procedure Manual to show that the policy permits arrestees to be handcuffed in front of their body "if there are medical and/or extenuating circumstances that will not allow handcuffs to be applied behind the [] back." (Kent County Sheriff's Off. Pol'y and Proc. Manual, ECF No. 40-2, PageID.664.) Plaintiff points to Defendant Deputies' depositions where they each stated that

11

handcuffing someone behind the back was policy. (Ysquierdo Dep. 23, ECF No. 39-5; Ondovcsik Dep. 11-12, ECF No. 39-6; Vickery Dep. 16, ECF No. 39-7.) Defendant Deputies' testimonies create a question of fact whether this is Kent County's policy despite the written manual. Therefore, Defendant Kent County is not entitled to summary judgment on this matter either.

Defendants argue that Kent County's policy requiring arrestees to be handcuffed is not unconstitutional. This is not the appropriate inquiry in a *Monell* liability claim. The issue is whether the municipality's policy or custom is the "moving force" behind a constitutional violation; not whether the policy or custom itself is unconstitutional. Therefore, Defendant Kent County's motion for summary judgment will be granted on the theory of inadequate training and denied as to the remainder of the *Monell* liability claim.

### C. Count III & IV: Claims under the ADA and Rehabilitation Act

The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act states "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Analysis of claims under both these statutes is generally the same as "the remedies, procedures, and rights available under Title II of the ADA parallel those available under the Rehabilitation Act." *Carpenter-Barker v. Ohio Dep't Medicaid*, 752 F. App'x 215, 219 (6th Cir. 2018). Under either of these statutes, Plaintiff must establish that "(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he] is being excluded from participation, being denied the benefits of, or being subjected to discrimination under the program solely because of [his] disability." *Dillery v. Sandusky*, 398 F.3d

562, 567 (6th Cir. 2005); *see McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 460 (6th Cir. 1997). Section 504 of the Rehabilitation Act requires an additional showing that "the discrimination must be 'solely' because of the disability," *Fritz v. Michigan*, 747 F. App'x 402, 404 (6th Cir. 2018), and that the defendant receives federal funds, *McPherson*, 119 F.3d at 460. At issue here is whether Plaintiff was disabled under the definition of the Acts at the time of his arrest, and if so, whether an arrest is covered by the ADA and the Rehabilitation Act.

### 1. Disability at the Time of Arrest

"A person is disabled under the ADA when the person has 'a physical or mental impairment that substantially limits one or more major life activities,' has 'a record of such impairment,' or is 'regarded as having such an impairment.'" *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (citing 42 U.S.C. § 12102(1)). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). The definition of disability is intended to be "construed in favor of broad coverage . . . to the maximum extent permitted by the terms of this chapter." *Id.* at § 12102(4)(A). Further, as directed by the ADA regulations, the Sixth Circuit has held that "the term 'major' shall not be interpreted strictly to create a demanding standard." *Harrison v. Soave Enters. LLC*, 826 F. App'x 517, 523 (6th Cir. 2020) (citing *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018)) (internal quotation marks omitted); *see* 29 C.F.R. § 1630.2(i)(2). "An impairment need not prevent, or significantly or severely restrict . . . a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(ii). "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* "The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within

13

the meaning of this section." *Id.* at § 1630.2(j)(ix). A comment on this regulation gives an example: "[i]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." 29 C.F.R. § 1630.2(j)(ix) (App.). That said, "not every impairment will constitute a disability within the meaning of this section." *Id.* at § 1630.2(j)(ii).

Defendants argue that Plaintiff does not meet the definition of a disabled person because he cannot produce evidence to show that his injury at the time of the arrest was causing a substantial limitation to one or more major life activities. Plaintiff's initial wrist surgery was on July 10, 2019. The arrest occurred on July 27, 2019, about two weeks later. Plaintiff states that he couldn't work for six months because of his injury. (Razmus Dep. 38.) There remain questions of fact whether the reinjury during the arrest caused the six-month inability to work or whether Plaintiff, without reinjury, would have been unable to work for six months following his initial wrist surgery. If Plaintiff's injury at the time of arrest would have caused him to be unable to work for the following six months, it could have constituted a substantial limitation to one or more major life activities. Defendants point to Plaintiff's medical records that report that Plaintiff was healing well after both his first and second surgeries. This fact does not prove or disprove whether Plaintiff was disabled at the time of the arrest. Whether he was healing well or not does not fully indicate the extent of Plaintiff's abilities or disabilities post-surgery. Therefore, there remains a genuine issue of material fact as to whether Plaintiff was disabled at the time of arrest.

### 2.    Arrest under the ADA and Rehabilitation Act

Both the ADA and the Rehabilitation Act forbid exclusion or denial of the benefits of the services, programs, or activities of a public entity. Neither the Supreme Court nor the Sixth Circuit have directly addressed whether Title II of the ADA applies in the context of arrest. *Roell v.*

14

*Hamilton Cnty.*, 870 F.3d 471, 489 (6th Cir. 2017). A number of other courts have considered this question, and courts have generally found that Title II applies to arrests, although "the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of the particular case." *Williams v. City of New York*, 121 F. Supp. 3d 354, 366 (S.D.N.Y. 2015); *see, e.g.*, *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (holding that the ADA applies to arrests, though "exigent circumstances inform the reasonableness analysis under the ADA"); *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000) (holding that if "the area was secure and there was no threat to human safety," the deputies "would have been under a duty to reasonably accommodate Hainze's disability in handling and transporting him to a mental health facility"); *Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999) ("[A] broad rule categorically excluding arrests from the scope of Title II . . . is not the law."); *Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) (holding that Title II of the ADA and § 504 of the Rehabilitation Act apply to post-arrest transportation).

The ADA regulations requires public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability," unless the modifications "would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7); *see also Madej v. Maiden*, 951 F.3d 364, 372 (6th Cir. 2020). As the Sixth Circuit has explained, "the phrase 'services, programs, or activities' encompasses virtually everything a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569-70 (6th Cir. 1998); *see also Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008). As the Eighth Circuit noted, the regulations further specify that

> The statutory term "program" includes "the operations of the agency or organization unit of government receiving or substantially benefitting from the Federal assistance awards, e.g., a police department or department of corrections." 28 C.F.R. § 42.540. The regulations also indicate that "benefit" includes "provision

15

> of services, financial aid, or disposition (i.e., handling, decision, sentencing, confinement, or other prescription of conduct." *Id.* The commentary also made clear that "[t]he general regulatory obligation to modify policies, practices, or procedures requires law enforcement to make changes in policies that result in discriminatory arrests or abuse of individuals with disabilities." 28 C.F.R. § 35, App. A, Subpart B.

*Gorman*, 152 F.3d at 913.

Defendants argue that an arrest is not a program or activity intended to be covered by either Act, relying primarily on *Rosen v. Montgomery County*, 121 F.3d 154 (4th Cir. 1997) and *Patrice v. Murphy*, 43 F. Supp. 2d 1156 (W.D. Wash. 1999). The district court in *Patrice* found that "an arrest is not the type of service, program, or activity from which a disabled person could be excluded or denied the benefits." 43 F. Supp. 2d at 1160. However, the Ninth Circuit's decision that the ADA applies to arrests in *Sheehan v. City & County of San Francisco* indicates that *Patrice* is no longer good law.

In *Rosen*, the court suggested in dicta that a reasonable accommodation claim pursuant to an arrest was not viable under Title II. 121 F.3d at 157-58. But in *Seremeth v. Board of County Commissioners of Frederick County*, 673 F.3d 333 (4th Cir. 2012), the Fourth Circuit narrowed *Rosen* considerably. *See Williams v. City of New York*, 121 F. Supp. 3d 354, 366-68 (S.D.N.Y. 2015) ("*Seremeth* recognized that the dicta in *Rosen* had been called into doubt but noted that '*Rosen*'s precedential reach is more properly cast as limited to the injury grounds necessary to reach its conclusion.'"). Therefore, the Court finds that Title II of the ADA and § 504 of the Rehabilitation Act apply in the context of arrests.

### 3. Reasonable Accommodation

Lastly, Defendants argue that even if the ADA and Rehabilitation Act apply, the Defendant Deputies attempted to accommodate Plaintiff and Plaintiff's suggestion that he should have not

16

been handcuffed is unreasonable. There are generally two types of Title II claims arising from arrests:

> (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and
>
> (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees.

*Sheehan*, 743 F.3d at 1232. The claim in this case falls under the second type, reasonable accommodation. Under this type of claim, the plaintiff bears the initial burden of producing evidence of the existence of a reasonable accommodation. *Id.* at 1233-34. If the public entity can show that the accommodation requested would "result in fundamental alteration in the nature of a service, program, or activity" or "undue financial and administrative burdens," there is no ADA violation. *Tucker v. Tennessee*, 539 F.3d 526, 533 (6th Cir. 2008) (citing 28 C.F.R. § 35.164). Plaintiff argues that Defendants could have accommodated his wrist injury by either handcuffing him in the front or not handcuffing him at all. Plaintiff was under arrest for a minor infraction, and he asserts that he was not a danger to himself or anyone else. Kent County's policy already indicates that arrestees may be handcuffed in the front if there are medical or extenuating circumstances. Defendants argue that their policy of handcuffing all arrestees was necessary for security purposes and the safety of officers and others but they have not otherwise shown that leaving Plaintiff uncuffed would be a "fundamental alteration" in their policing service. A reasonable jury could find that not handcuffing Plaintiff was a reasonable accommodation for his disability, considering that Plaintiff did not present a safety threat or attempt to evade arrest. For these reasons and "because the reasonableness of an accommodation is ordinarily a question of

17

fact," *see Sheehan*, 743 F.3d at 1233, Defendant County is not entitled to judgment as a matter of law on Plaintiff's ADA and Rehabilitation Act claims.

## IV. CONCLUSION

For the reasons stated, the Court will grant the Defendants' motion for summary judgment on the inadequate training theory for *Monell* liability and deny the motion on all other grounds. An order will enter consistent with this Opinion.

Dated: November 24, 2021     /s/ Hala Y. Jarbou
                              HALA Y. JARBOU
                              UNITED STATES DISTRICT JUDGE